UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IDEARC MEDIA CORP., a Delaware
corporation,

              Plaintiff/Counter-Defendant,

     v.

NORTHWEST DIRECTORIES, INC., an
Oregon corporation,

            Defendant/Counter-Claimant.

Civil No.  07-796-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      Plaintiff Idearc Media Corp. (Idearc) has filed a Motion for Preliminary Injunction [27]

and a Motion for Summary Judgment [34], and defendant Northwest Directories, Inc. (NWD)

has filed a Motion for Summary Judgment [41].  Oral argument on the preliminary injunction

was heard on April 22, 2008, and argument on the motions for summary judgment was heard on

May 20, 2008.  After considering the evidence and argument before the court, plaintiff's Motion

for Preliminary Injunction is denied, plaintiff's Motion for Summary Judgment is granted in part

and denied in part, and defendant's Motion for Summary Judgment is denied.

1  - OPINION AND ORDER

# I.    BACKGROUND

In 2006, Verizon Directories Corporation (VDC) published and distributed a telephone directory in Yamhill County ("the 2006 directory").  The yellow pages section of the directory included a number of display ads.  Display ads typically include graphics, colors and text beyond the name, address, and telephone number of the business.  NWD admits to scanning copies of all of the display ads in the 2006 directory and using those scanned ads to create display ads for use in the telephone directory that it distributed in Yamhill County in 2007 ("the 2007 directory").  As part of an attempt to enter the Yamhill County directory business, NWD did not charge advertisers for placement of ads in the 2007 directory.  The display ads from the 2006 directory that are reproduced in the 2007 directory are essentially identical.  However, because the pages in the two directories are of a different size, the ads in the 2007 directory are often different sizes than those in the 2006 directory.  As a result, Idearc admits that none of the ads in the 2007 directory are totally identical.  After the distribution of the 2007 directory, Idearc brought suit against NWD alleging infringement of its copyright in the 2006 directory.

While the case was pending, NWD published another directory in Yamhill County ("the 2008 directory").  This directory omits most of the display ads from the 2007 directory, but includes seventeen display ads allegedly copied from the 2006 directory.  Those ads also appear in the 2007 directory.  In response to the publication of the 2008 directory, Idearc filed a motion for a preliminary injunction.  The court heard argument on that motion but held a decision in abeyance pending completion of briefing on summary judgment, which presented similar issues in the context of the 2007 directory.  The analysis of all pending motions is thus consolidated in this opinion and order.

## II.    DISCUSSION

For Idearc to succeed on its claim of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Both of the elements are in dispute.

### A.    Legal Standards

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Plaintiff, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson,* 477 U.S. at 248-49. There must be specific, admissible evidence identifying the basis for the dispute. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

The Copyright Act provides that courts may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. "To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious

3    - OPINION AND ORDER

questions going to the merits and the balance of hardships tipping in [the movant's] favor." *MAI Systems Corp v. Peak Computer, Inc.*, 991 F.2d 511, 516 (9th Cir. 1993) (quotation omitted). Irreparable harm is generally presumed when there is a likelihood of success on the merits of a copyright infringement claim. *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1155 (9th Cir. 2006).

**B.    Ownership or Standing to Enforce Copyright**

NWD argues that Idearc cannot sue to enforce a copyright in the display ads in the 2006 directory for several reasons. First, it argues that no ownership interest or exclusive license was transferred from VDC to Idearc. Second, it argues that any copyright in the display ads belongs to the advertisers and not Idearc. Third, it argues that Idearc cannot sue to enforce any copyright in display ads that do not bear a separate copyright mark.

**1.    Transfer from VDC**

Copyright infringement actions can be instituted only by the "legal or beneficial owner of an exclusive right under copyright." 15 U.S.C. § 501(b). The copyright certificate for the 2006 directory, TX-6-440-803, shows that the author was VDC and that it was an update to an earlier copyrighted directory with "revisions and additions, including some text, artwork, and compilations of information, [and a] revised compilation in classified." Pearman Decl. Ex. 5 at 1-2. NWD argues that Idearc holds only a non-exclusive license to the 2006 directory and thus has no standing to pursue an infringement action.

NWD's argument is based on provisions of a November 7, 2006 contract between Verizon Services Corporation and Idearc ("the IP contract"). Pearman Decl. Ex. 7. Verizon Service Corporation, however, is a different company from VDC. The record shows that VDC, the owner of the copyright, changed its name to Idearc on October 18, 2006. Pearman Decl. Ex.

5 at 6-8.[1]  Shortly thereafter, Idearc's parent corporation, Idearc Information Services, LLC, a

subsidiary of Verizon Services Corporation, was transferred to Idearc, Inc.  As part of this

process, Idearc entered into the IP contract.  However, none of these transactions altered the fact

that Idearc (formerly VDC) owns the copyright in the 2006 directory.  Accordingly, there is no

question of material fact that Idearc is the owner of copyright TX-6-440-803.

### 2.      Ownership of Display Ads

Idearc argues that it owns a copyright in the display ads and that all advertisers signed a

form contract with Idearc (or VDC) granting those rights to Idearc.  NWD, in turn, argues that

the form contract does not give those rights to Idearc.  The form advertising contract states that

"if [Idearc] creates or supplies any Advertising Copy for [the advertiser, the advertiser] agree[s]

that . . . [Idearc] retains all rights in and/or ownership of any such Advertising Copy and . . . [the

advertiser] will not have the right to allow others to use such advertising or any such content."

Pearman Decl. Ex. 3 § 4(d).  The language of the contract also makes it clear that the advertiser

retains the rights to any copyrightable material that they provided to Idearc.  *Id*. § 4(b).  Thus,

the effect of the contract is to preserve any existing rights held by the advertiser, while at the

same time giving Idearc exclusive rights to anything that it creates in the course of preparing

display ads.

Idearc has provided copies of the form contract and testimony establishing that every

advertiser who placed a display ad was required to enter into the form contract, and that Idearc's

---

[1]  NWD has submitted documents from the State of Delaware in an attempt to show that Idearc cannot be the owner of the copyright because it was incorporated in 1996.  Idearc has provided documentation that the corporation currently bearing the name Idearc is the same company as VDC.  NWD's submissions do not demonstrate that there is an issue for trial – it is readily apparent that corporations may undergo name changes over time, and thus the documents submitted by NWD are meaningless absent some documentation that those corporations have always had the names listed in the documents provided.

policy was not to agree to modification or deviation from the contract. Pearman Decl. Ex. 4 at 4 (Allison Dep.). NWD argues that Idearc has failed to produce copies of every signed contract, and thus has failed to show that the copyright belongs to Idearc.[2] NWD, however, offers no evidence refuting the fact that these form contracts were the ones signed by customers at the time, or that Idearc's policy was to allow deviation from the contract. Further, even in the absence of a contract, Idearc has submitted testimony showing that its employees or agents played a role in creating display ads.

"As a general rule, the author [and copyright owner] is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). An exception to this rule is the work for hire doctrine, which dictates that when a work is made for hire, "'the employer or other person for whom the work was prepared is consider the author' and owns the copyright unless there is a written agreement to the contrary." *Id.* (quoting 17 U.S.C. § 201(b)). A work for hire includes "a work prepared by an employee within the scope of his or her employment." *Id.* at 738 (quoting quoting 17 U.S.C. § 101). "[P]rinciples of [the] general common law of agency [dictate] whether the work was prepared by an employee or an independent contractor." *Id.* at 750. NWD argues that one of the artists who created display ads at issue here, Denise Alvarez, was not an employee of Idearc. There is no dispute that Alvarez, though an employee of TAC Worldwide, was trained by Idearc, that she works in Idearc's offices every day, that she works with Idearc employees, using Idearc equipment, that she performs work only for Idearc, and that under the terms of her employment contract, Idearc owns the copyright to any work that she creates. *See* Pearman Supp. Decl. Ex. 1 (Alvarez Dep.). NWD

---

[2] A number of signed form contracts were provided as part of the preliminary injunction briefing. *See* Stecz-Hunter Decl. Ex. 1.

points to the fact that Alvarez is paid by TAC, that she reports her hours to TAC, and that her employment benefits are solely from TAC.  However, examining the balance of the facts, all of which are undisputed, the court finds that Idearc's independent contractor Denise Alvarez qualifies as an employee of Idearc under the common law of agency, and that work done by Alvarez is the property of Idearc under the work for hire doctrine.

For these reasons, the court holds that Idearc owns a copyright in the display ads.

### 3.    Copyright Notice

The parties argue at some length about whether the telephone book here is a compilation or a collective work.  A compilation "is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  *See* 17 U.S.C. § 101.  One specific type of compilation is a "collective work," which "is a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."  *Id.*  NWD argues that because the 2006 directory contains some display ads that are owned and copyrighted by third parties, the directory is a compilation.  The court finds that the directory has some attributes of both a collective work and a compilation.  While the 2006 directory is largely an arrangement of data and preexisting material, it also includes some separate and independent works.  Though the dominant character of the 2006 directory is as a compilation, the court deems it appropriate to also analyze it as a collective work.

NWD argues that because the 2006 directory is a collective work, even if the display ads are subject to copyright, Idearc cannot sue to enforce that copyright absent the publication of a separate copyright notice on each ad.  In support of this argument NWD cites 17 U.S.C. § 404(a) and the Tenth Circuit's opinion in *Transwestern Publishing Co. v. Multimedia Marketing*

*Associates, Inc.*, 133 F.3d 773 (10th Cir. 1998). TransWestern, a telephone directory publisher, alleged that defendants had copied and published yellow pages display ads similar to those contained in its directory. *Id.* at 775. The court analyzed the directory as a whole, treating it as a compilation, and found that overall there were so many dissimilarities between the directories as a whole that the compilation copyright was not infringed. *Id.* at 777. Despite this dispositive holding, the court then turned to comparison of individual display ads that were allegedly copied and held that there was a failure to prove any creative contribution to those ads by plaintiff. *Id.* at 777-78. Alternately, the court analyzed the directory as a collective work, looking at each display ad as "a separate creation, akin to short stories with individual authors." *Id.* at 780. The court then applied 17 U.S.C. § 404(a), which states that:

> A separate contribution to a collective work may bear its own notice of copyright, as provided by sections 401 through 403. However, a single notice applicable to the collective work as a whole is sufficient to invoke the provisions of section 401(d) or 402(d), as applicable with respect to the separate contributions it contains (not including advertisements inserted on behalf of persons other than the owner of copyright in the collective work), regardless of the ownership of copyright in the contributions and whether or not they have been previously published.

Based on this code section, the *TransWestern* court concluded that there is no protection for advertisements in a collective work under the copyright law unless they are subject to a separate copyright and so noticed. *Id.* at 781. The concurring opinion in *TransWestern* disagrees with the majority's decision to compare the directories as compilations, and also with the 17 U.S.C. § 404(a) analysis. *Id.* at 781 (Briscoe, J., concurring). The concurrence notes that after the United States acceded to the Berne Convention in 1989, notice was no longer a prerequisite to copyright protection. *Id.* at 782.

Here, there is no dispute that the 2006 directory bears a copyright notice, but that the ads at issue do not bear such a notice. The court does not agree with the *TransWestern* majority's

view of 17 U.S.C. § 404(a), which is both obiter dictum and not binding precedent.  The plain meaning of § 404(a) is that absence of a copyright notice on "advertisements inserted on behalf of persons other than the owner of the copyright in the collective work" simply eliminates the evidentiary presumption against innocent infringement provided by 17 U.S.C. § 401(d). Eliminating this presumption has no bearing on the existence of enforceable rights in the ad. This understanding of the statute is consistent  with the fact that a copyright notice is not required to hold a valid copyright.  See Berne Convention Implementation Act of 1988, Pub. L. No. 100-568, § 7, 102 Stat. 2853 (1988).  Accordingly, Idearc is not barred from enforcing its copyright in the display ads by § 404(a).

　　　The next question is whether Idearc has registered its copyright.  Although registration is not required to own a copyright, it is a prerequisite to suit for infringement.  *Compare* 17 U.S.C. § 408 *with* 17 U.S.C. § 411(a).  Further, some statutory remedies are not available unless a copyright was registered at the time of the alleged infringement.  17 U.S.C. § 412.  Here, there is no dispute that the 2006 directory has a registered copyright.  However, the nature of the infringement allegations in this suit, *i.e.* copying of display ads, raises the question of whether registration of the 2006 directory as a compilation is sufficient to serve as registration for individual ads.

　　　Here, Idearc is the owner of the copyright for the 2006 directory, and asserts ownership of copyrights in some of the display ads contained therein.  "[W]here the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action . . . for the constituent part." *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001); *see also* 37 C.F. R. 202.3(b)(4) ("For the purpose of registration on a single application and payment of a single registration fee, the following shall be considered a single work: . . . all copyrightable elements that are otherwise

9   - OPINION AND ORDER

recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same."); *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 539 (4th Cir. 2007) (same); *Educ. Testing Serv. v. Katzman*, 793 F.2d 533, 538-39 (3d Cir. 1986) (same). This understanding of the law also comports with common sense. It would be absurd and inefficient to require the author of a larger work to individually register every possible smaller component of that work that qualified individually for copyright protection.

For the reasons stated above, the court holds that Idearc's copyright in the individual display ads was registered as part of the registration of the 2006 directory as a compilation. Suit for infringement of the copyright in those display ads is not foreclosed by 17 U.S.C. § 404(a).

## C.    Copyright Infringement

NWD argues that the individual display ads contained in the 2006 directory do not contain sufficient originality to warrant copyright protection, and that even if they do, the 2007 directory is not substantially similar to the 2006 directory. Idearc argues that NWD copied the display ads that it used and that the copying of those ads is sufficient to show infringement of the copyright.

Once copyright ownership is established, a showing of infringement requires that Idearc demonstrate that NWD copied "constituent elements of the work that are original." *Feist*, 499 U.S. at 361. "Absent evidence of direct copying, proof of infringement involves fact-based showings that the defendant had access to the plaintiff's work and that the two works are substantially similar." *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006). "It is an axiom of copyright law that the protection granted to a copyrighted work extends only to the particular expression of the idea and never to the idea itself." *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1162 (9th Cir. 1977). When examining whether a particular expression has been copied, the scope of the copyright "cannot

be limited literally to the text, else a plagiarist would escape by immaterial variations." *Id.* at

1167 (quoting *Nichols v. Univ. Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) (Hand, J.)).

"[I]n determining whether a fact-based work is an original work of authorship, [courts]

should focus on the manner in which the collected facts have been selected, coordinated, and

arranged." *Feist*, 499 U.S. at 358. In *Feist*, the Supreme Court explained that the facts in the

white pages of a directory were not subject to copyright, but that the selection, coordination and

arrangement of those facts could constitute copyrightable expression. *Id.* at 361. The court

concluded that the simple alphabetical listing of the entries in the book was "an age-old practice,

firmly rooted in tradition and so commonplace that it has come to be expected as a matter of

course." *Id.* at 363. It found that there was insufficient originality to meet the constitutional

originality requirement. In a case decided shortly after *Feist*, the Second Circuit applied this

new test and held that a directory which had entries specifically selected to cater to the Chinese-

American community, with specialized page headings, was sufficiently creative to meet the

originality requirement. *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters.*, 945 F.2d 509, 513

(2d Cir. 1991).

Here, NWD clearly had access to the 2006 directory. There is also uncontroverted

evidence that NWD copied the display ads, both when it scanned them and when it reproduced

them for use in the 2007 directory. *See* Pearman Decl. Exs. 10 (Treash Dep.), 11 (Galloway

Dep.), 12 (Erickson Dep.). Thus, the question confronting the court is whether Idearc has shown

that it provided sufficient original elements to the work and that those constituent elements were

copied by NWD. Idearc has submitted affidavits from artists indicating the contributions that

they made to certain display ads, and the method by which display ads are created. To refute the

claims of original contributions to the ads, NWD has submitted affidavits from some advertisers

asserting that they provided input and content for the display ads at issue. Idearc does not

11 - OPINION AND ORDER

dispute that the advertisers contributed to the display ads, but asserts that it was the Idearc artists who translated the advertisers' ideas into copyrightable expression.

The method by which ads were created and placed in the 2006 directory was explained by Idearc spec art supervisor Suzanne Lee, who has worked at Idearc and its predecessor companies for approximately fifteen years. Lee Decl. ¶ 1. She supervises a department of seventeen graphic artists who develop ads for customers based on specifications from sales representatives. *Id.* ¶ 2-4. The sales representatives provide "information, which can at times include a sketch, business card, photograph or other advertiser-supplied material, to graphic artists," who are responsible for "the placement, layout and arrangement of this information in [a] manner that will be artistically pleasing." *Id.* ¶ 4. The artists "use their creative skills to arrange text and graphics in the ads, to create graphics and to select clip art, colors and font type." *Id.* Artists use clip art from a library of clips that Idearc has licensed for use. *Id.* ¶ 10. "Customers may contribute to these decisions, and have final approval of their ads, but graphic artists are responsible for using their creative judgment when arranging the content of the ads within the advertiser's specifications." *Id.* ¶ 5. Lee attached ad copy sheets for seventeen ads that were published in the 2006 directory and were created by members of her department. *Id.* Ex. 1. In some instances, customers ask Idearc to create a new display ad based on an ad previously created by Idearc, in which case the artist will use the old ad as a guide. *See* Barrett Decl.

In response, NWD argues that the Idearc artists did not provide sufficient creative input to meet the requirement of originality. It also provides declarations from a number of advertisers indicating that they made contributions and suggestions in the design of the ads, and that they believe that they were the primary creators of the display ads. *See* Mepham Decl. Exs. 2-7, 9-11, 13-15. Two advertisers submitted declarations stating that they provided camera-ready copies of

their display ads to Idearc.  *Id.* Exs. 8, 12.  Aside from the camera-ready ads, the evidence put

forth by defendants does not establish that there is a genuine dispute of material fact as to the

fact that Idearc's spec art department contributed original design elements, including selection,

coordination and arrangement of facts in a graphic design that evinces far more originality than

the alphabetical organization found wanting in *Feist*.  A non-exhaustive list of examples of the

contributions documented by Idearc are: (1)  selection of the flag photograph, star-shaped layout

and curved text in the Johnstone and Goodfellow ad; (2) suggesting the use of a truck

photograph and laying out the McMinnville Gas Company ad; (3) selecting fonts and colors,

choosing a location for a text block, selecting complementary colors, and adding an arch to the

Gale's Towing ad; and (4) selecting and modifying stock art to make text over it more legible,

deciding text layout and using a red box to highlight a phone number in the Integrity Auto ad.

These contributions by Idearc, "make the grade quite easily, as they possess some

creative spark, no matter how crude, humble or obvious it might be" *Feist*, 499 U.S. at 345

(quotation omitted).  If NWD had made any effort to actually modify ads, then they likely would

have created some material issues of fact on the question of infringement, and a need to identify

with great specificity the specific contributions of the artists versus those of the advertisers.  But

they did not do that.  Instead, in a brazen attempt to enter the Yamhill County market, they

digitally copied the 2006 directory and set about cloning the ads for use in their own 2007

directory.  Even a cursory inspection of the two directories demonstrates the wholesale copying

of the display ads.  As discussed previously, the compilation copyright held by Idearc is

sufficient to cover those parts of the directory that could individually be subject of copyright.

Thus, copying of individual portions of the directory may serve as a basis for a copyright

infringement claim.  And here, where almost every display ad in the 2006 directory was both

copied digitally and in print, there is little doubt that the 2007 directory clearly infringes on

13 - OPINION AND ORDER

Idearc's copyright.[3]

### D.    Remedies

### 1.    Statutory Damages

The copyright was registered in 2006 and thus Idearc may elect to seek statutory damages in lieu of actual damages.  17 U.S.C. § 504(c).  The Copyright Act provides for "an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just.  For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work."  *Id.* § 504(c)(1).  If the court finds that the infringement was willful, the damages may be increased to "a sum of not more than $150,000."  *Id.* § 504(c)(2).  Idearc claims that it is entitled to compensation for four acts of infringement.  However, the text of § 504(c)(1) clearly indicates that the statutory damages for *all* infringements of the copyright in a single work (here a compilation) are lumped together.  *See Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990).  Thus, for the purposes of calculating the statutory damages, all acts of infringement of the 2006 directory, the only work at issue, are subject to a single award.  This includes copies made during scanning, in the distributed paper copies, and the evanescent copies generated each time an Internet user visits the Yamhill County directory on the NWD web site.

Idearc also argues that the infringement here was willful, and that the cap on statutory damages should thus be increased to $150,000.  The Ninth Circuit has approved of a definition of willfulness in the context of copyright infringement acting "with knowledge that defendants'

---

[3]  NWD's invocation of the fair use doctrine to defend the scanning of the ads is risible, since that effort was not aimed at extracting factual information, but rather at direct copying of the layout and design of the display ads.  *Cf. Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 602-08 (9th Cir. 2000) (finding that intermediate copying of computer firmware to extract elements not protected by copyright was a fair use).

conduct constituted an act of infringement." *Peer Int'l Corp. v. Pausa Records*, 909 F.2d 1332, 1335 (9th Cir. 1990). Idearc urges the court to hold that copying a work with reckless disregard for whether it is subject to copyright is sufficient, relying on *N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992). Even applying the recklessness standard of *N.A.S.*, Idearc has not met its burden to show there was willfulness. NWD certainly showed poor judgment in moving forward with the 2006 directory without seeking legal advice. However, drawing all inferences in favor of NWD, the record on summary judgment does not support a finding of willfulness. Accordingly, Idearc is awarded $30,000 in statutory damages.[4]

### 2.    Attorney's Fees

"Plaintiffs in copyright actions may be awarded attorney's fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable." *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989); *see also* 17 U.S.C. § 505. Here, the court finds that an award of reasonable attorney's fees and costs, to be determined in post-judgment briefing, is appropriate in light of the need to deter the sort of large-scale copying evident in this case.

### 3.    Injunction

Idearc seeks a permanent injunction based on the publication of the 2007 directory and a preliminary injunction based on the publication of the 2008 directory. The Copyright Act gives the court authority to "grant temporary and final injunction on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502. " In a copyright infringement action, however, 'a showing of a reasonable likelihood of success on the merits

---

[4] The court notes that this holding on willfulness is limited to the publication of the 2007 directory, and that the subsequent publication of the 2008 directory after there was notice to NWD of potential copyright infringement is not at issue on summary judgment.

raises a presumption of irreparable harm.'" *LGS Architects*, 434 F.3d at 1155. However, the court is mindful of the Supreme Court's recent admonishment that "according to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

Here, the court presumes that there is irreparable harm, because NWD is infringing the display ads and using them to compete with Idearc in the Yamhill County directory market. It is unclear to what extent NWD has diluted the market for display ads or drawn business away from Idearc. However, NWD's infringement and this litigation have certainly caused significant harm to the good will between Idearc and its customers, many of whom have been drawn into the case as affiants. It is unclear that monetary compensation will suffice to remedy that harm. Despite the fact that NWD is a small company by comparison to Idearc, the hardship of allowing a small competitor to piggyback on Idearc's copyrighted work product is significant. Further, equitable relief will not stop NWD from competing without copying. Both companies distribute directories free of charge throughout Yamhill County. Nothing in the record suggests that removing the infringing directories from the market would harm the public, given the fact that the directories contain largely identical content.

Accordingly, the court finds that permanent injunctive relief is appropriate. **IT IS HEREBY ORDERED that NWD and its officers, directors, agents, employees, and all persons acting in concert with it are permanently enjoined from copying, reproducing,**

**distributing, adapting, displaying, advertising, promoting, offering for sale, or posting on its web site any telephone directory that incorporates the display ads contained in the 2006 directory or the facsimiles of those display ads reproduced in the 2007 directory.**

The seventeen ads in the 2008 directory that are the subject of the preliminary injunction motion also appear in the 2007 directory, and as a result are subject to the permanent injunction. Thus, Idearc's motion for a preliminary injunction is largely mooted. To the extent that Idearc seeks relief above and beyond that afforded here, the preliminary injunction is denied.

**III.     CONCLUSION**

For the foregoing reasons, Idearc's Motion for Preliminary Injunction [27] is DENIED.

Idearc's Motion for Summary Judgment [34] is GRANTED IN PART AND DENIED IN PART,[5]

and NWD's Motion for Summary Judgment [41] is DENIED.

IT IS SO ORDERED.

DATED this ___23___ day of May, 2008.


_____/s/ Ancer L. Haggerty_____
Ancer L. Haggerty
United States District Judge

---

[5] The only remaining issue for trial, absent amendment of the complaint to include the 2008 directory, is the question of whether NWD's infringement of the copyright by publishing the 2007 directory was willful.